## Montenegro-Riehm Music Company v. Beuris.

(Decided October 28, 1914.)

## Appeal from Breathitt Circuit Court.

1. Sales—Sale of Personalty—When a Mortgage.—A provision in a contract of sale of a piano to the effect that no title or interest therein shall pass to the buyer until after the payment in full of the purchase money, and that until that time the ownership of the piano is to remain in the seller, is invalid; in such cases the title passes to the buyer, and the transaction will be treated as a sale of the piano, and a mortgage thereof back to the seller, with a lien for the purchase money.

2. Sales—Sale of Personalty with Right to Retake Possession— When It May Be Done.—A provision in a contract selling a piano, which authorizes the seller to retake possession of the piano in default of payment of the purchase price, is valid and enforceable, with the limitation, however, that the right to retake possession must not be exercised with such force as will amount to a breach of the peace, or an assault, or subject the seller to an action for trespass.

3. Sales—Sale of Mortgaged Chattel by Mortgagee.—After having lawfully retaken possession of a mortgaged chattel, the seller may sell it, if so provided by the terms of his contract, at a fair public or private sale, and upon adequate notice to the owner.

4. Mortgages—Foreclosure Forbidden.—A sale of a mortgaged chattel by the mortgagee under a power of sale, is a mere enforcing of the lien of the mortgagee, and does not violate Section 375 of the Civil Code, which forbids the foreclosure of a mortgage, whereby the mortgagor's right of redemption of the mortgaged premises was barred or foreclosed forever, and the title forfeited without a sale.

5. Mortgages—Mortgagee of Chattel in Possession—Duty of.— Where the seller of personal property retakes possession thereof under a contract of sale authorizing him to do so upon default in the payment of the purchase money, he holds it as the property of the buyer, for the purpose only of paying the debt upon it; the title of the buyer is not forfeited; and any surplus remaining after the payment of the debt is the property of the buyer, who will be treated as a mortgagor.

6.  Mortgages—Mortgagee of Personalty in Possession—Liability of
    —Liability of Mortgagor.—When a seller of personal property re-
    takes possession thereof under a contract of sale which author-
    izes him to do so upon default in the payment of the purchase
    money, he is liable to the buyer for the actual value of the
    property so taken, and the buyer is liable to the seller for the
    unpaid purchase money—the one to be set off against the other.

O. H. POLLARD for appellant.

W. L. KASH and KELLY KASH for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

On September 12, 1904, the appellant sold to the ap-
pellee, Cora Beuris, at Jackson, Kentucky, a piano for
$325.00. Of the purchase price, $120.00 was paid by Mrs.
Beuris surrendering to appellant an organ which she
had theretofore bought from the appellant; the remain-
ing $205.00 was payable in monthly installments of $7.00
each, with interest from the date of the sale. The con-
tract of sale was in writing, and contained the following
provision:

"The above described instrument continues to be the
property of the said Montenegro-Riehm Music Co. not-
withstanding said delivery, and no title to, or interest in,
said instrument shall pass to or be vested in the under-
signed (Mrs. Beuris) except upon and after the full pay-
ment by the undersigned of this obligation; and until
such payment in full the said Montenegro-Riehm Music
Co. shall retain the unqualified ownership of said instru-
ment. In the event that any of the above payments shall
not be paid as they become due, I agree to surrender, re-
deliver and return said instrument in as good condition
as reasonable wear and use will permit, to the said
Montenegro-Riehm Music Co., and will permit them or
their agents to enter into and upon any premises where
said instrument may be, or is reasonably believed to be,
and re-possess and remove same without legal process;
but if it shall be necessary to bring suit therefor, I agree
to pay the cost thereof.

"It is further agreed that the said Montenegro-Riehm
Music Co. shall retain all moneys paid upon this obliga-
tion less than the full amount thereof, as rent and the
use of and damage to said instrument, and they shall not
in any event refund the moneys paid or any part
thereof."

On and between November 19, 1904, and July 5, 1907, Mrs. Beuris made eight payments, aggregating $136.50, which, when taken with the $120.00 paid at the time of the sale, gave her a credit of $256.50. After the last payment of July 5, 1907, Mrs. Beuris and her family moved to Hindman in Knott County, carrying the piano with them, a distance of some 40 miles overland; and after they had lived there for several years they returned to Jackson, bringi: g the piano back with them. In 1911 appellant undertook to collect the remainder of its debt, and with that purpose in view, it sent its salesman, Mera, to Jackson to see Mrs. Beuris and her husband. He found the piano in a very bad condition. While Mrs. Beuris lived in Hindman her house had been burned; and either in the fire, or upon some other occasion, the piano evidently had been badly soaked with water. The strings were rusty, the felts unglued, and part of the mahogany casing on one end had been knocked off. No agreement to pay the debt was reached, and nothing further was done upon this first trip.

Some two weeks later, however, Mera made a second trip, in company with Fisher, a piano tuner in the service of appellant, who carefully examined the piano and found its condition to be as above described. Fisher explained to appellee and her husband that it would be impossible to repair the piano without taking it to the shop.

Mrs. Beuris contends that she made a contract with Mera, by which appellant agreed to take the piano to its shop in Lexington, and repair it so as to make it as good as new; and that if it was not satisfactory to Mrs. Beuris appellant would give her a new one of the same make; and she was to continue and complete her payments under the original contract of 1904. Mrs. Beuris did not testify upon the trial, but her claim as to the new contract is sustained by the evidence of her husband, T. H. Beuris; of her thirteen-year-old son, Charles Beuris; and her sister-in-law, Mrs. Mary Beuris. The last named witness says Mrs. Napier was present at the time the contract was made; but Mrs. Napier did not testify.

Mera stoutly denies that any such contract was made, and says the contract was this: That in order to get Mrs. Beuris to pay the remainder of her purchase price that had remained unpaid since 1907—more than four years—he acting for appellant, agreed to take the piano to Lexington and repair it as well as could be done under the circumstances, at appellant's expense, and that upon the

redelivery of the repaired piano, Mrs. Beuris was to then pay all she owed under the original contract. Fisher fully sustains Mera in his version of the contract.

Appellee turned the piano over to appellant, who carried it to its shop at Lexington, repaired it according to the agreement, and notified appellee that it was ready for delivery. Mr. Beuris called at appellee's store and examined the piano, but did not express any satisfaction or dissatisfaction with it—merely saying that he would see to it later. Appellant refused to deliver the piano until the balance of the purchase money was paid; and, as appellee would not pay, appellant held the piano some six or eight months, and then sold it for $150.00, which was its fair value, as repaired, according to the uncontradicted testimony.

On January 15, 1912, Mrs. Beuris brought this action seeking to recover the nine items of purchase money, aggregating $256.50; and, by an amended petition she set up the new contract above referred to; alleged that appellant had wrongfully obtained possession of the piano from her, and prayed for a return of the piano if to be had, and if not for a judgment for the sum of $266.50. The answer controverted the petitions, and by way of counterclaim it set up the terms of the original contract; the appellee's failure to carry it out as above recited; that it had demanded of appellee a return of the piano, which was refused; that by way of settling their differences appellant agreed to repair the piano and deliver it to her in good condition upon the payment of the balance due upon the contract, with its accrued interest; that it had notified appellee on March 29, 1911, of the completion of the repairs, and that it was ready to deliver the piano, but that appellee refused to pay anything thereon; and it closed with a prayer that the appellant be adjudged to be the owner of the piano, and, if that could not be done, it asked judgment against the appellee for $238.50, with interest thereon from September 24, 1904, until paid, subject to the eight credits aggregating $136.50, as above indicated, and that its lien upon the instrument be enforced by a sale thereof.

Upon the trial the chancellor gave Mrs. Beuris a judgment against the defendant for $225.00, with interest thereon from January 15, 1912, the day the petition was filed; and from that judgment the defendant appeals.

According to the terms of the contract of sale, no title or interest in the piano was to pass to or be vested in

Mrs. Beuris until after the payment in full of the purchase money, and until that time the unqualified ownership of the piano was to remain in the piano company, with the right in it to retake possession of the piano without legal process.

Under the decisions of this court, the first clause above recited, providing against the passing of the title to the buyer, was invalid; the title passed to the buyer, and the transaction will be treated as a sale, and a mortgage back to the seller, with a lien for the purchase price. Barney & Smith Mgf. Co. v. Hart, Receiver, 8 Ky. L. R., 227; Greer v. Church, 13 Bush, 430; Baldwin v. Crow, 86 Ky., 682; Wicks Bros. v. McConnell, 102 Ky., 435, 438; Aultman v. Meade, 121 Ky., 241; Wender Blue Gem Coal Co. v. Louisville Property Co., 137 Ky., 347; Singer Sewing Machine Co. v. Dyer, 156 Ky., 159.

The second provision of the contract, authorizing the seller to retake possession of the piano upon default in paying the purchase price, was valid and enforceable. Barney & Smith Mfg Co. v. Hart, Receiver, 8 Ky. L. R., 227; Meyerfield, Bloom & Co. v. Roberts, 14 Ky. L. R., 475; Andrews v. Singer Mfg. Co., 20 Ky. L. R., 1089, 48 S. W., 976; White Sewing Machine Co. v. Conner, 111 Ky., 831; Hawkins Furniture Co. v. Morris, 143 Ky., 740.

The valid right of the seller to retake possession of the mortgaged personalty upon default of payment, must not be confounded with the invalid claim that the title does not pass by the sale. Furthermore, the right of the seller to retake possession of the property must not be exercised with such force as would amount to a breach of the peace, or an assault, or subject him to an action for trespass; and, when taken with the consent or without the objection of the mortgagor, the seller still holds it as the property of the buyer, for the purpose only of paying the debt upon it. Andrews v. Singer Mfg. Co., 20 Ky. L. R., 1089; Hawkins Furniture Co. v. Morris, 143 Ky., 740.

A contract of this character is not contrary to public policy. Singer Mfg. Co. v. Rios, 96 Tex., 174, 60 L. R. A., 143.

In White Sewing Machine Co. v. Conner, 111 Ky., 831, the court said:

"Whatever may have been or may be the law relative to the right of a mortgagee of a chattel to its possession upon condition broken, in the case at bar it was stipulated between the parties, as one of the conditions

upon which appellant parted with its title and invested appellee with the possession of the machine, that, in the event she failed to pay any of the installments thereon, then, at the option of appellant, the whole of its debt should become due, and furthermore, that it should repossess itself of the property. This, we hold, was not an unreasonable provision, and as appellee obtained her possession by virtue of it, she ought not to be allowed to complain if appellant repossesses itself by virtue of the same agreement.''

But the title of the buyer is not forfeited to the seller; he only holds it for the payment of his debt, and any surplus remaining after the payment of the debt, is the property of the buyer.

After having lawfully retaken possession of the mortgaged chattel, the seller may sell it, if it be so provided by the terms of his contract, at a fair public or private sale and upon adequate notice to the owner. Barney & Smith Mfg. Co. v. Hart, Receiver, 8 Ky. L. R., 227; Meyerfield, Bloom & Co. v. Roberts, 14 Ky. L. R., 473; Spalding v. Mattingly, 89 Ky., 83; White Sewing Machine Co. v. Conner, 111 Ky., 831; Hawkins Furniture Co. v. Morris, 143 Ky., 741.

Such a procedure is a mere enforcing of the lien and does not violate section 375 of the Civil Code, which forbids the foreclosure of a mortgage. By the practice there forbidden the mortgagor's right of redemption of the mortgaged premises was barred or foreclosed forever; the title was forfeited to the mortgagee for default in payment of the money due on the mortgage, without a sale of the mortgaged premises. 2 Blacks. Com., 159.

The language used in Aultman v. Meade, 121 Ky., 245, is not to be otherwise construed when read in connection with the context, and the ruling in that case; and the same is to be said with reference to the language found in Singer Mfg. Co. v. Dyer, 156 Ky., 159, where the court was laying emphasis upon the fact that the title remained in the buyer, and could be divested only by a sale, although the property be retaken into the possession of the seller.

But the contract under consideration only gave the appellant the right to retake the property; it did not give it the right to resell it. It attempted to forfeit the buyer's title to the seller, which, we have seen, could not be done. The appellant, therefore, held the piano as the property of Mrs. Beuris, and subject to the mort-

gage debt of the appellant; and having sold it without notice to her, the appellant's act amounted to a conversion thereof.

Under these circumstances the appellant was liable to Mrs. Beuris for the actual value of the piano, and she was liable to appellant for the unpaid purchase money due under the original contract of 1904. White Sewing Machine Co. v. Conner, *supra;* Hawkins Furniture Co. v. Morris, *supra.*

The test of the value of the piano is the price realized at a fair sale thereof; and, since the uncontradicted evidence shows that $150.00 was a full and fair price for the piano, appellant is chargeable with that amount, as being its actual value.

On the other hand, Mrs. Beuris, under her contract, owed appellant a balance of $205.00, with interest from September 24, 1904, subject to the eight credits paid on and between November 19, 1904, and July 5, 1907.

A calculation of her debt, with interest, and giving her the credits above indicated, shows that she owed appellant $117.65 as of the day the suit was filed (January 15, 1912); which sum, when credited against the $150.00, the value of the piano, leaves a balance of $32.35 due Mrs. Beuris as of January 15, 1912.

Judgment reversed, with instructions to set it aside and enter a judgment for $32.35 in favor of appellee, as above indicated.