RENDERED: SEPTEMBER 24, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1686-MR

COREY M. BIDDLE AND JOHN K.                          APPELLANTS
POTTS


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NO. 18-CI-00621


PUBLIC SERVICE COMMISSION OF
KENTUCKY AND CELLCO
PARTNERSHIP D/B/A VERIZON
WIRELESS                                              APPELLEES


                            OPINION
                    REVERSING AND REMANDING

                        ** ** ** ** **

BEFORE:  DIXON, KRAMER,[1] AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Corey M. Biddle and John K. Potts appeal from the

Franklin Circuit Court's order which upheld the denial of their motion to intervene

---

[1] Judge Joy A. Kramer dissented in this Opinion prior to her retirement effective September 1, 2021.  Release of this Opinion was delayed by administrative handling.

in an action before the Public Service Commission of Kentucky (the Commission) as to whether Kentucky RSA #3 Cellular General Partnership (RSA #3) would be granted a certificate of public convenience and necessity (CPCN) to build and operate a permanent cell tower at property in Stephensport, outside of Hardinsburg, Breckinridge County, Kentucky. The proposed site adjoined property owned by Biddle and Potts. Subsequent to the denial of their motion to intervene, the CPCN was granted.

Biddle and Potts separately own several parcels of property in a single-family residential development in Stephensport which was platted in 2003, but as of yet is mostly undeveloped. This property is not under the jurisdiction of a planning commission. Biddle owns lots 5-9, 11, 12, and 20-23; Potts owns lots 13-18; and RSA #3 leased lot 4.

Biddle bought lots 11, 12, and 20-23, and Potts bought lots 13-18 before RSA #3 leased lot 4 in 2008 and placed a cell tower on wheels (COW) on Lot 4. The COW is approximately sixty feet tall and intended as a temporary coverage gap solution. Subsequent to the placement of the COW, Biddle bought lots 5-9.

Lot 4 shares borders with lots 3, 5, 15, 16, 23, and 24. Biddle's lot 5 is just west of lot 4 and shares its west border; Biddle's lot 23 is north of lot 4 and

shares part of its north border. Potts's lots 15 and 16 are south of lot 4 and share its southern border.

On October 25, 2017, RSA #3 filed an application requesting a CPCN to construct a wireless communication facility (cell tower) at lot 4 pursuant to Kentucky Revised Statutes (KRS) 278.650. As adjoining landowners, Biddle and Potts received notice of the requested CPCN.

Biddle and Potts, *pro se*, moved to intervene. The Commission held an informal conference with them regarding intervention. Biddle and Potts explained their status as adjoining landowners and expressed concerns with the location selected within a subdivision and how a permanent and much taller cell tower would impact their property values. They suggested alternative sites they believed would be feasible as well as co-location on sites with existing cell towers. They stated that if they were allowed to intervene, they would provide expert testimony to support their position.

The Commission denied Biddle's and Potts's request to intervene.[2] First, the Commission stated that intervention by anyone other than the Attorney

---

[2] The relevant Commission orders can be found here: *In the Matter of: Application of Kentucky RSA #3 Cellular General Partnership for Approval to Construct and Operate a New Cell Facility to Provide Cellular Radio Service (Stephensport) in Rural Service Area #3 (Breckinridge County) of the Commonwealth of Kentucky*, No. 2017-00143, 2018 WL 1806013 (Ky. P.S.C. Apr. 11, 2018) (order denying intervention); *In the Matter of: Application of Kentucky RSA #3 Cellular General Partnership for Approval to Construct and Operate a New Cell Facility to Provide Cellular Radio Service (Stephensport) in Rural Service Area #3 (Breckinridge County) of the Commonwealth of Kentucky*, No. 2017-00143, 2018 WL 2396603

-3-

General is permissive and within the sound discretion of the Commission pursuant to 807 Kentucky Administrative Regulations (KAR) 5:001 Section 4. The Commission then quoted 807 KAR 5:001 Section 4(11)(b) which provides two alternative bases for intervention, that the person "has a special interest in the case that is not otherwise adequately represented" or that the person's "intervention is likely to present issues or to develop facts that assist the commission in fully considering the matter without unduly complicating or disrupting the proceedings." Despite quoting the regulation, the Commission simply found: "Mr. Biddle and Mr. Potts are unlikely to present issues or develop facts that will assist the Commission in fully considering this matter." It then discussed that the COW was a temporary solution to bolster cell phone coverage and coverage would be inadequate if the COW were to be removed and the permanent cell tower was not approved to replace it, opining that intervention was not warranted because Biddle and Potts only offered unsupported lay opinion that other sites were feasible.

Biddle filed a motion for rehearing, purportedly on behalf of himself and Potts. The Commission denied the motion for rehearing.

---

(Ky. P.S.C. May 23, 2018) (order denying rehearing); *In the Matter of: Application of Kentucky RSA No. 3 Cellular General Partnership for Approval to Construct and Operate a New Cell Facility to Provide Cellular Radio Service (Stephensport) in Rural Service Area No. 3 (Breckinridge County) of the Commonwealth of Kentucky*, No. 2017-00143, 2018 WL 2761709 (Ky. P.S.C. Jun. 4, 2018) (final order).

In the Commission's final order granting the CPCN to RSA #3, it noted that Biddle and Potts had filed requests to intervene, stated they opposed the location of the cell tower due to concerns about a potential decrease in property value and "offer[ed] to provide competing expert testimony that the proposed cell tower would be inconsistent with the community image"; "question[ed] whether Kentucky RSA #3 adequately researched options for collocation and alternative sites"; "argue[d] that a more discr[ete] location for a cell phone tower would be more appropriate"; and "dispute[d] that placing the tower at the proposed site would remedy gaps in coverage." The Commission explained that it denied their motion for intervention because "[t]he Commission found that Mr. Biddle and Mr. Potts failed to provide sufficient evidence to support their assertions, and were, therefore, unlikely to present issues or develop facts that would assist the Commission in considering this matter."

Biddle and Potts, who were now represented by counsel, then filed a complaint before the Franklin Circuit Court to vacate or set aside the orders of the Commission on the basis that the Commission erred by: failing to properly consider their motion to intervene where they should have been allowed to intervene as a matter of right or the Commission should have at least been required to make a finding on whether they had a "special interest" warranting intervention; denying the motion for a rehearing; approving the CPCN despite the evidence they

-5-

presented; and not informing them, as *pro se* individuals, of the process for obtaining a public hearing.

The circuit court denied that the Commission committed any error, explaining Biddle and Potts had no right to intervene under KRS 278.665(2), but had an opportunity to request intervention pursuant to 807 KAR 5:001 Section 4(11)(a). It concluded the order denying intervention was lawful and reasonable based on the Commission's finding that Biddle and Potts did not present issues or facts that would assist the Commission in deciding the matter as they solely presented lay opinion and general concerns that were unsupported. The circuit court further found that Biddle and Potts did not demonstrate that they had a special interest in the matter, explaining that determining if a person has a "special interest" is in the discretion of the Commission and "[t]o demonstrate that they have a 'special interest,' Plaintiffs showed only that they are neighboring landowners and proposed other locations for the cell tower that consisted of lay opinion, which the Commission did not believe constituted enough of a 'special interest' to allow intervention."

As to the request for rehearing, the circuit court noted that only Biddle requested a rehearing and as he was *pro se*, Biddle could not represent Potts. The circuit court agreed that because Potts was not a party to the request for the

-6-

rehearing, Potts could not argue this issue on appeal and thus was "dismissed from the portion of the appeal relating to [this order]."

As to the substance of the motion for rehearing, the circuit court determined there was no need for a rehearing as Biddle did not establish that he met the standard for permissive intervention, noting that Biddle and Potts did not "demonstrate how their interest in the case and subsequent intervention would assist the Commission in considering the matter and not complicate or disrupt the proceedings" and in his motion Biddle "did not produce any new evidence or information that would assist the Commission in considering the matter" as he only "submitted lay opinion."

Regarding the grant of the CPCN to RSA #3 and Biddle's and Potts's reasons for vacating it, which included that they were unlawfully excluded from intervening, and seven other reasons, the circuit court found that none of their arguments was "compelling or necessary" as they were "never made parties . . . [and] therefore they do not have standing to challenge the Order on appeal." It declined to address the final order and their specific arguments on the merits, stating Biddle and Potts failed to demonstrate that the Commission did not follow the statutory guidelines in granting the CPCN or the order was unlawful or unreasonable.

Finally, the circuit court determined that the Commission had no duty to inform Biddle and Potts about what was needed to convene a public hearing, or how to request one just because they were *pro se*. It stated the Commission acted appropriately in advising them to obtain counsel rather than offering them legal advice.

Biddle and Potts appealed. While the matter was pending on appeal, Kentucky RSA #3 Cellular General Partnership (RSA #3) was subsequently sold to Cellco Partnership D/B/A Verizon Wireless (Verizon), which was substituted as a party.[3]

On appeal, Biddle and Potts argue: (1) the Commission and the circuit court erred as a matter of law in not granting their motion to intervene because: (a) they have an absolute right to intervene as adjoining property owners pursuant to KRS 278.665(2); (b) the Commission acted arbitrarily in failing to grant them intervenor status based on their "special interests"; and (c) the circuit court erred in failing to properly consider their "special interests"; (2) the Commission acted arbitrarily and inconsistent with the law by: (a) imposing an improper burden on them to prove why the proposed cell tower site was inappropriate before allowing them to intervene; (b) conducting an informal

---

[3] We note that the brief for RSA #3 was submitted by its counsel and Verizon has its own counsel. However, we continue to consider the arguments made by RSA #3.

conference and using preliminary information to deny their motion to intervene; and (c) failing to inform them of the opportunity to request a public hearing; and (3) the Commission and the circuit court unconstitutionally abridged their right to judicial review by: (a) requiring them to first request a rehearing from the Commission before seeking judicial review; and (b) if KRS 278.410(1) does not allow people denied the right to intervene to challenge such a denial, then it is unconstitutional as special legislation which denies equal protection of the law to such people.

The Commission and RSA #3 argue that Biddle and Potts have no standing to contest the denial of their motion to intervene as they do not qualify as "parties to a commission proceeding" and, thus could not properly bring an action to review the order of the commission before the circuit court. We discuss this argument first as establishing whether the denial of the motion to intervene can be entertained is a threshold issue.

KRS 278.410(1) provides in relevant part:

> Any party to a commission proceeding or any utility affected by an order of the commission may, within thirty (30) days after service of the order, or within twenty (20) days after its application for rehearing has been denied by failure of the commission to act, or within twenty (20) days after service of the final order on rehearing, when a rehearing has been granted, bring an action against the commission in the Franklin Circuit Court to vacate or set aside the order or determination on the ground that it is unlawful or unreasonable.

All of the parties discuss at length the import of *Public Service Commission of Kentucky v. Shepherd*, No. 2018-CA-001859-OA, 2019 WL 1087266 (Ky.App. Mar. 6, 2019) (*Shepherd I*), *reversed by Metropolitan Housing Coalition v. Shepherd*, Nos. 2019-SC-000195-MR and 2019-SC-000196-MR, 2020 WL 2831838 (Ky. May 28, 2020) (*Shepherd II*). *Shepherd I* was not final at the time the briefs were filed and all the parties acknowledged that it was pending on discretionary review.[4]

However, *Shepherd I* is neither controlling nor persuasive because it was reversed as moot by *Shepherd II*, with the Kentucky Supreme Court declining to "delve into the important substantive issues this case presents."[5] *Shepherd II*, 2020 WL 2831838, at *4. The substantive appellate case involved in the *Shepherd*

---

[4] In *Shepherd I*, the Court of Appeals granted the Commission's request for a writ of prohibition barring the circuit court from entertaining an interlocutory appeal of its decision not to permit intervention by certain persons in a rate-making case for lack of subject matter jurisdiction. *Shepherd I*, 2019 WL 1087266, at *1. In dicta, the Court opined that the language regarding intervention in rate cases was equivalent to the language in KRS 278.665(2) informing contiguous property owners of the opportunity to intervene, explaining "[e]ach of these is another way of saying what is expressly stated in another statute – that a person 'may intervene in accordance with commission administrative regulations.'" *Shepherd I*, 2019 WL 1087266, at *6 (quoting KRS 278.543(5)). The Court explained "[t]his is not a case in which a failure of due process deprived the Real Parties of a right. They have no right at stake." *Id.* at *9. The Court granted the writ of prohibition, stating that the circuit court should have dismissed for lack of subject matter jurisdiction. *Id.* at *10-11.

[5] The Kentucky Supreme Court determined the matter was moot "because the Franklin Circuit Court had already issued a final disposition of the matter and remanded the case back to the Commission for further proceedings prior to the entry of the writ[.]" *Shepherd II*, 2020 WL 2831838, at *3.

cases, *Public Service Commission of Kentucky v. Metropolitan Housing Coalition*, 2019-CA-0542-MR, is pending on appeal before the Court of Appeals now.

We review the Commission's denial of the motion for intervention for abuse of discretion. *Inter-County Rural Elec. Coop. Corp. v. Public Service Commission*, 407 S.W.2d 127, 130 (Ky. 1966). In that case, two electric companies, Inter-County Rural Electric Cooperative Corporation (Inter-County) and Kentucky Utilities Corporation (KU) had a dispute as to who should be providing electric services to a manufacturing plant and Inter-County brought its dispute before the Commission. *Id.* at 128. East Kentucky Rural Electric Cooperative Corporation (East Kentucky), who was the wholesale power distributor to Inter-County, filed a motion to intervene which was denied; the Commission offered that its counsel could remain and assist Inter-County. *Id.* at 128-29. Inter-County moved for a continuance, stating it was not prepared to continue without East Kentucky and later told the Commission it could not proceed without East Kentucky and its petition was dismissed. *Id.* at 129. Inter-County and East Kentucky then filed a complaint before the Franklin Circuit Court, naming the Commission and challenging the denial of East Kentucky's motion to intervene. *Id.* The circuit court dismissed the complaint. The matter was then appealed to Kentucky's then highest court, which considered whether the Commission had erred in denying intervention to East Kentucky. In doing so, it

assumed it was appropriate to have judicial review of the denial of a motion to intervene. *Id.* at 129-30.

Of note, in *Inter-County Rural Electric Cooperative Corporation*, the Court considered the import of the, then current, 1952 version of KRS 278.410(1). This version was substantively the same as the current version of this statute and contained the same "[a]ny party" language. The Court believed KRS 278.410(1) provided a sufficient basis for allowing judicial review of the denial of the motion to intervene "on the ground that [the Commission's action] is unlawful or unreasonable." *Inter-County Rural Elec. Coop. Corp.*, 407 S.W.2d at 129.

We interpret the "any party" language in the 1952 and current version of KRS 278.410(1) as allowing persons seeking to be parties pursuant to a proper motion for intervention before the Commission which was denied to be parties for purposes of challenging the denial of such motion.[6] Therefore, while judicial

---

[6] A trio of unpublished Court of Appeals cases also support our conclusion that Biddle and Potts have an undeniable right to judicial review of the denial of their motions to intervene. In *Karem v. Kentucky Public Service Commission*, No. 2017-CA-001697-MR, 2019 WL 1579653, at *3 (Ky.App. Apr. 12, 2019), the Court unequivocally declared that the person seeking review of the denial of his motion to intervene in a Commission action regarding placement of a solar facility "had standing . . . to contest the [Commission's] denial of his motion to intervene." In *Young v. Public Service Commission of Kentucky*, No. 2009-CA-000292-MR, 2010 WL 4739964, at *2 (Ky.App. Nov. 24, 2010), while the Court held that the appeal of a denial of a motion for intervention before the final matter was concluded was interlocutory and, accordingly, the circuit court did not err in denying it, noting "any appeal of the denial must occur after final adjudication in the underlying case[,]" the Court did not question the right of the would-be intervenors to bring such an action challenging the denial of their motion to intervene after the underlying commission action was final. Similarly, while standing was not directly addressed in *EnviroPower, LLC v. Public Service Commission of Kentucky*, No. 2005-CA-001792-MR, 2007

-12-

review of arbitrary actions by the Commission could properly be undertaken pursuant to *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 456 (Ky. 1964), we do not find it necessary to review the Commission's actions under this framework because review is appropriate pursuant to KRS 278.410(1).

We disagree with Biddle and Potts that they have an absolute right to intervention pursuant to KRS 278.665(2) based on the fact that they were entitled to receive notice of the pending action. Notice regarding the availability of intervention in these matters is set out in KRS 278.665(2) and 807 KAR 5:063. The statute and the regulation have overlapping standards as to who needs to be notified about the availability of intervention and of what that notice should consist.

KRS 278.665(2) states in relevant part:

> At a minimum, when the site of the proposed cellular antenna tower is outside of an incorporated city, the commission *shall require that every person who owns property contiguous to the property where the proposed cellular antenna tower will be located receives notice* by certified mail, return receipt requested, of the proposed construction, given the commission docket number under which the application will be processed, and *informed of the opportunity to intervene* in the commission proceedings on the application.

WL 289328, at *3-5 (Ky.App. Feb. 2, 2007), the Court in reviewing the denial of a motion to intervene did not question the propriety of the action or the appeal of it.

-13-

(Emphasis added.)

807 KAR 5:063 states:

Section 1. (1) To apply for a certificate of public convenience and necessity, a utility proposing to construct a telecommunications antenna tower in an area which is not within the jurisdiction of a planning unit that has adopted planning and zoning administrative regulations in accordance with KRS Chapter 100, shall file with the Public Service Commission the following information:

. . .

(k) A map . . . that identifies every structure and every owner of real estate within 500 feet of the proposed tower;

(l) *A statement that every person who, according to the records of the property valuation administrator, owns property within 500 feet of the proposed tower has been*:

1. *Notified* by certified mail, return receipt requested, of the proposed construction;

2. Given the commission docket number under which the application will be processed; and

3. *Informed of his right to request intervention*;

(m) A list of the property owners who received the notice, together with copies of the certified letters sent to listed property owners;

. . .

Section 2. If the construction is proposed for an area outside the incorporated boundaries of a city, the

-14-

> application shall state that *public notices required by Section 1(1)(l) have been sent to every person who, according to the property valuation administrator, owns property contiguous to the property upon which the construction is proposed.*

(Emphasis added.)

These provisions do not grant an absolute right to intervention but merely state who needs to be informed based on either being adjoining property owners or located within 500 feet of the proposed site of the cell tower. The "shall" in KRS 278.665(2) states who must be informed "of the opportunity to intervene[.]" Intervention is not guaranteed. Although Biddle and Potts attempt to contrast the language of KRS 278.665(2) regarding contiguous property owners and 807 KAR 5:063 Section 1(1)(l)3., which states property owners within 500 feet must be "[i]nformed of [their] right to request intervention[,]" we do not believe the intent of the regulation was to grant such property owners a lesser right than that mandated by statute as Section 2 references Section 1(1)(l) in stating the application shall state that notices "have been sent to every person who . . . owns property contiguous to the property on which the construction is proposed."

Additionally, as the Commission and RSA #3 note, 807 KAR 5:001 Section 4(11)(a), which allows for intervention provides: "A person who wishes to become a party to a case before the commission may, by timely motion, request leave to intervene." We agree that 807 KAR 5:001 Section 4(11), which is

-15-

addressed specifically to the process of applying for intervention, controls. After all, no matter how vital an interest a property owner might have, a right to intervene could still be waived if a motion to intervene is not timely filed.

Biddle and Potts argue that even if it were not mandatory that their motions to intervene be granted, they were wrongfully denied intervention under 807 KAR 5:001 Section 4(11)(b). To provide clarity to their argument, we have added bracketed numbers to subsections and emphasized key words in this regulation:

> The commission shall grant a person leave to intervene if [(1)] the commission finds that he or she has made a timely motion for intervention *and* [(2)(a)] that he or she has a special interest in the case that is not otherwise adequately represented *or* [(b)] that his or her intervention is likely to present issues or to develop facts that assist the commission in fully considering the matter without unduly complicating or disrupting the proceedings.

*Id.* (emphasis added).[7]

---

[7] This language is similar to that in 807 KAR 5:110 Section 4(2), regarding intervention in Kentucky State Board on Electric Generation and Transmission Siting, which states:

> A motion to intervene shall be granted if the movant has shown:
>
> (a) That he has a special interest in the proceeding; or
>
> (b) That his participation in the proceeding will assist the board in reaching its decision and would not unduly interrupt the proceeding.

Biddle and Potts argue that the Commission erred in only determining they were "unlikely to present issues or develop facts that will assist the Commission in fully considering this matter" and failed to consider an alternative basis upon which they should have been granted intervention, whether they have "a special interest in the case."[8] They argue that the circuit court erred by both agreeing that intervention was unwarranted and finding that they had no special interest.

The language contained in 807 KAR 5:001 Section 4(11)(b) is plain and unambiguous. Therefore, it is not open to interpretation or substitution and should be "construed literally where there is no reason why it should not be so

---

[8] It appears that in other CPCN proceedings, the Commission while consistently citing 807 KAR 5:001 Section 4(11)(b), typically only considers whether "intervention is likely to present issues or to develop facts that assist the commission in fully considering the matter without unduly complicating or disrupting the proceedings" as this is the language it routinely relies upon in denying motions to intervene. *See, e.g.*, *In the Matter of: Application of New Cingular Wireless PCS, LLC d/b/a AT&T Mobility for Issuance of a Certificate of Public Convenience and Necessity to Construct a Wireless Communications Facility in the Commonwealth of Kentucky in the County of Butler*, No. 2017-00369, 2018 WL 401363, *1 (Ky. P.S.C. Jan. 9, 2018); *In the Matter of: Application of New Cingular Wireless PCS, LLC for Issuance of a Certificate of Public Convenience and Necessity to Construct a Wireless Communications Facility in the Commonwealth of Kentucky in the County of Graves*, No. 2017-00368, 2017 WL 6558645, *2 (Ky. P.S.C. Dec. 20, 2017); *In the Matter of: Application of New Cingular Wireless PCS, LLC and American Towers LLC for Issuance of a Certificate of Public Convenience and Necessity to Construct a Wireless Communications Facility in the Commonwealth of Kentucky in the County of Wolfe*, No. 2015-00404, 2016 WL 1545557, *2 (Ky. P.S.C. Apr. 11, 2016).

In fact, we were only able to locate one order by the Commission in which it considered whether the person seeking to intervene had a special interest. *See In the Matter of: Application of East Kentucky Network, LLC DBA Appalachian Wireless for the Issuance of a Certificate of Public Convenience to Construct a Tower in Magoffin County, Kentucky*, No. 2016-00326, 2017 WL 716618, *2 (Ky. P.S.C. Feb. 20, 2017).

interpreted[.]" *Overnite Transp. Co. v. Gaddis*, 793 S.W.2d 129, 131 (Ky.App. 1990).

The only possible way to uphold the Commission's denial of the motion to intervene would be to interpret the word "or" as an "and." As explained by the United States Supreme Court, when "operative terms are connected by the conjunction 'or' . . . [the] ordinary use [of 'or'] is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45, 134 S.Ct. 557, 567, 187 L.Ed.2d 472 (2013) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)). However, while the Commission and RSA #3 argue intervention was appropriately denied, they do not dispute the "or" in the regulation should be treated as a disjunctive.[9]

As there is no reason here to interpret "or" as "and," the Commission erred as a matter of law by failing to consider whether Biddle or Potts "has a special interest in the case that is not otherwise adequately represented" and denying their motion to intervene. While the circuit court appeared to notice this

---

[9] Our interpretation of 807 KAR 5:001 Section 4(11)(b) is consistent with how it was interpreted in *EnviroPower, LLC*, 2007 WL 289328, at *4, when it was then Section 3(8). There, another panel of our Court stated that intervention in a Commission action "requires the showing of *either* 'a special interest in the proceeding which is not otherwise adequately represented,' *or* a showing that intervention 'is likely to present issues or to develop facts that assist the commission in fully considering the matter without unduly complicating or disrupting the proceedings.'" *EnviroPower, LLC*, 2007 WL 289328, at *4 (emphasis added).

lack of a finding, it concluded that Biddle and Potts failed to demonstrate they had a special interest in the case. The circuit court erred in making a finding for the Commission. Therefore, given the lack of an appropriate finding by the Commission, the circuit court could not have properly affirmed the Commission's order denying the motion to intervene and its subsequent final order.

We turn again to *Inter-County Rural Electric Cooperative Corporation*, to examine when intervention is mandatory or permissive. In that case, the Court specifically determined that intervention as of right was not required because "there was no claim made that the representation of East Kentucky's interest by Inter-County would or might be inadequate" and permissive intervention was not warranted because:

> It will be recalled that the Commission had offered to permit East Kentucky's counsel to 'assist' counsel for Inter-County. The hearing looking toward disposition of the controversy on the merits would have related to the dispute between Inter-County and KU. Any evidence and technical assistance which East Kentucky considered vital could easily have been made available to Inter-County and presented to the Commission. We agree that the interest of East Kentucky was 'just too remote,' as stated by the Commission.

407 S.W.2d at 130.

This decision is diametrically opposed to that before us where, given the lack of a city and absence of a planning commission, without the opposition provided by adjoining landowners being permitted to intervene, there is only the

-19-

Commission reviewing whether the documents filed by RSA #3 comply with the requirements to obtain a CPCN. So, while we can conceive of a situation where more peripheral neighbors may not be entitled to intervene as their general interests are already being adequately represented, here there was no one participating in the case who would represent Biddle's and Potts's interests. Therefore, it was of vital importance for the Commission to consider whether or not Biddle and Potts have a special interest in this matter, and we do not assume as the circuit court did that their status as adjoining property owners cannot be sufficient in and of itself to qualify them as having a special interest.

We must assume that the regulation's use of the term "special interest" was not accidental but was instead conceived of in a manner that this term would be interpreted consistently with prior case law. The term "special interest" while not defined in 807 KAR 5:001 Section 1 has a long legal history and such term has been applied to protect the rights of adjoining property owners to the use and enjoyment of their property. For example, in *Louisville Home Telephone Company v. City of Louisville*, 130 Ky. 611, 113 S.W. 855 (1908), the Court noted:

> [A]*butting property holders* on a public street, by reason of their peculiar and particular right in the use of the street as a means of ingress and egress to and from their properties, and the apparent danger to their properties, distinguishable from the right in the general public to the use of the street as a highway, *had such direct and special interest as entitled them to a writ of mandamus* to

compel the preservation and repair of the street by those upon whom the law placed that public duty.

*Id.* at 857 (emphasis added). Similarly, a nuisance action may be pursued by a landowner who establishes a "special interest" in that his or her property once had two means of ingress and egress, but now only has one because a street or alley that abuts said property is now obstructed by the adjoining landowner's use of it. *Bannon v. Murphy*, 18 Ky. L. Rptr. 989, 38 S.W. 889, 890 (1897). Likewise, a property owner who has been using a passway appurtenant to his farm under claim of right for more than fifteen years can be found to have an easement; such property owner "has such a special interest in the passway that he may enjoin its obstruction or injury by defendants." *Powell v. Wines*, 179 Ky. 414, 200 S.W. 641, 642 (1918). In *Barr v. Stevens*, 4 Ky. 292, 293-94, 1 Bibb. 292, 1808 WL 903 (1808), the Court explained that to maintain a writ of error regarding the opening of a new road or change of a road's route, the prospective parties "ought to show they have a particular interest, or a particular private damage. . . . [T]he 'act concerning public roads,' . . . directed those through whose lands the road is about to be established to be summoned, and none others; because they only have a special interest."

Similarly, a person who does not own a particular item of real or personal property might still have a "special interest" in it by virtue of being a lienholder or being a direct beneficiary of it. *See Farmers & Depositors Bank v.*

-21-

*Taylor*, 290 Ky. 774, 162 S.W.2d 764, 767 (1942) (holding "a lienholder [of a car] has a special interest in the property which under the law would entitle him to recover its possession under our Code remedy for that purpose as a substitute for the common-law action of replevin"); *Greenway v. Irvine's Tr.*, 279 Ky. 632, 131 S.W.2d 705, 708-11 (1939) (explaining a person seeking to enforce a charitable trust regarding the particular use of a residence, rather than seeking to enforce a reversionary interest, must demonstrate a "special interest" in the matter and not simply be a member of the public who might benefit from its enforcement or the grantor; a direct beneficiary would have a sufficient "special interest" to pursue enforcement of the trust); *New Jersey Mut. Ins. Co. v. Glore*, 6 Ky.Op. 523, 523, 1873 WL 11210 (1873) (establishing pawnbroker who possessed a watch and held a lien on it to secure the repayment of a loan had a "special interest" in that watch and its recovery when it was seized by a constable and sold to satisfy a debt).

Similarly, some of our sister states have explicitly stated that adjoining property owners have a "special interest" as to whether a zoning variance will be granted or a non-conforming use will be permitted on an adjoining piece of property. *See Caran v. Freda*, 108 R.I. 748, 753, 279 A.2d 405, 408 (1971) (permitting intervention on appeal as a matter of right by adjoining property owners who had opposed a zoning variance which would have allowed a shopping mall to be built next to their property and whose denial was now being appealed,

reasoning "petitioners, as abutting property owners, have a special interest in the pending appeal" and the zoning board was not obligated to act as a representative of the public's interest); *Bucky v. Zoning Board of Appeals*, 33 Conn. Supp. 607, 607-08, 363 A.2d 1119, 1120 (Conn. Super. Ct. 1976) (a lower court decision cited by appellate courts such as in *Horton v. Meskill*, 187 Conn. 187, 192, 445 A.2d 579, 582 (1982), for the proposition that intervention as of right exists in Connecticut) (holding that an abutting property owner had a has a "special interest" allowing for intervention as his property interest would be directly affected if, upon appeal of a cease and desist order and denial of a special permit, the other property owner was ultimately allowed to continue to maintain a dog boarding and grooming facility).

Given the purposes of KRS 278.665(2) in making sure adjoining property owners outside of an incorporated city receive notice, we believe that the General Assembly was trying to involve these property owners in the process when there might often be no governmental body accountable to its citizens involved in the process. While we cannot say that adjoining property owners should be allowed to intervene as a matter of right if a motion is timely made, we think it likely that many could demonstrate a special interest in such proceedings and the Commission may well abuse its discretion in denying them intervention. However,

-23-

we will not usurp the Commission's role to fact find whether Biddle and Potts have demonstrated a special interest requiring they be granted intervention.

We observe that the Commission used to favor intervention by interested parties, readily granting intervention with little to no analysis. For example, in *In Re Cumberland Cellular Partnership*, No. 2006-00146, 2006 WL 2585481, *1 (Ky. P.S.C. Aug. 9, 2006), a case in which no objection was made to intervention, the Commission found that "since Ms. Grider owns property within 500 feet of the proposed tower, her intervention is likely to present issues and develop facts that will assist the Commission in fully considering this matter without unduly complicating or disrupting the proceedings and that full intervention should be granted."[10]

There is no change in the relevant statutes or regulations to justify such a shift away from allowing interventions. It is inappropriate for the Commission to simply "rubber stamp" all requests for a CPCN through a streamlined process that might be possible when requests for intervention are habitually denied without appropriate consideration. When either prong of 807

---

[10] For other examples, *see In the Matter of: Application of East Kentucky Network Limited Liability Company for the Issuance of a Certificate of Public Convenience and Necessity to Construct a Tower in Letcher County, Kentucky*, No. 2009-00064, 2009 WL 9048132 (Ky. P.S.C. Apr. 20, 2009); *In Re Bluegrass Wireless, LLC*, No. 2005-00320, 2005 WL 2650831 (Ky. P.S.C. Oct. 7, 2005); *In Re Third Kentucky Cellular Corp.*, No. 2002-00006, 2003 WL 21019444 (Ky. P.S.C. Mar. 25, 2003) (all granting intervention).

KAR 5:001 Section 4(11)(b) is established, the Commission "shall" grant the person leave to intervene.

As we are reversing, we need not address Biddle's and Potts's additional arguments in depth. We do agree with them that there is a distinction between the showing to be made in establishing whether intervention is warranted and the presentation of actual evidence. As is clear in the Commission's orders, Biddle and Potts offered to provide not just their own opinions as to the inappropriateness of the placement of the cell tower and the feasibility of other sites, but also expert witnesses to support their opinions. We are less troubled by the informal nature of the meeting held to consider their request to intervene as compared with the inappropriate requirements for what they had to demonstrate at that stage. It is unreasonable for persons requesting intervention to have to present their evidence in full at that juncture.

We additionally note that we see nothing in the circuit court's decision that Potts was not a party to the motion for rehearing, and statement that Potts was not part of that portion of the action, which would deny Potts from being a proper participant in the action or keep Potts from participating the appeal before us. We agree that KRS 278.410 provides alternative timelines for review depending upon whether an application for rehearing is filed or not, but when one

party has filed a motion for rehearing, it delays finality, allowing both parties to wait to appeal until after the final order on rehearing is issued.

Although it would be appropriate and proper for the Commission to inform interested persons about how to secure a public hearing, there is no requirement in statute or in regulation requiring them to do so. Biddle and Potts being *pro se* before the Commission does not somehow create such a duty.

It is inappropriate to challenge the constitutionality of KRS 278.410(1) without doing so below within their original petition to the circuit court and without Biddle and Potts also informing the Attorney General of such an action pursuant to KRS 418.075. Therefore, this issue could not properly be considered by us on appeal.

Finally, we decline to rule on the merits of the approval of the CPCN as it is not appropriate to do so at this juncture given the procedural posture of this case. We do not believe Biddle and Potts have standing at this juncture to challenge anything other than the denial of their motions to intervene.

Additionally, by reversing the circuit court's judgment upholding the denial of the motion to intervene and requiring that the Commission consider and make factual findings as to whether intervention is appropriate based on a special interest, if Biddle and Potts are granted intervention, they will be able to introduce

evidence that could potentially lead to a different result.[11]  Therefore, any such challenge would be premature at this juncture.

Accordingly, we reverse and remand for the Franklin Circuit Court to vacate the Commission's final order and require the Commission to consider whether Biddle and Potts should be allowed to intervene because they have demonstrated a special interest in the proceedings.  In doing so, the Commission must provide Biddle and Potts with an appropriate full hearing at which they may present evidence as to why intervention should be granted under either prong of 807 KAR 5:001 Section 4(11)(b), and the Commission must make appropriate factual findings as supported by the evidence.

DIXON, JUDGE, CONCURS.

KRAMER, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

---

[11] Even when intervention is granted, and a full adversarial hearing takes place, it is rare when a cell tower is not approved.  *See, e.g.*, *In the Matter of:  Application of East Kentucky Network Limited Liability Company for the Issuance of a Certificate of Public Convenience and Necessity to Construct a Wireless Telecommunications Facility in Letcher County, Kentucky*, No. 2009-00064, 2010 WL 677031 (Ky. P.S.C. Feb. 22, 2010); *In Re Cumberland Cellular Partnership*, No. 2005-00445, 2007 WL 2472364 (Ky. P.S.C. Jul. 13, 2007).  Part of this likely stems from what occurred in *Telespectrum, Inc. v. Public Service Commission of Kentucky*, 227 F.3d 414, 424 (6th Cir. 2000), which determined that unsupported opinion testimony by witnesses and concerns of health risks due to emissions may not constitute substantial evidence in support of denial of an application and affirmed the federal district court opinion ordering the commissioners to grant a CPCN.  However, occasionally a modification in location or compromise in placement may occur.  *See In Re Titan Towers, LP*, No. 2001-00219-UAC, 2002 WL 1625623 (Ky. P.S.C. Jun. 19, 2002); *In Re SprintCom, Inc.*, No. 2000-143-UAC, 2001 WL 1915733 (Ky. P.S.C. Nov. 28, 2001).

KRAMER, JUDGE, DISSENTING:  Respectfully, I submit that Appellants have identified no cognizable basis of error in this matter and that the Franklin Circuit Court should be affirmed for the reasons set forth in its dispositive order.

BRIEFS FOR APPELLANTS:

Michael Edward Gregory
Gregory Edward Mayes
Louisville, Kentucky

Thomas Joseph FitzGerald
Frankfort, Kentucky

BRIEF FOR APPELLEE PUBLIC
SERVICE COMMISSION OF
KENTUCKY:

John Edward Brooks Pinney
Brittany Hayes Koenig
William Andrew Bowker
Frankfort, Kentucky

BRIEF FOR KENTUCKY RSA #3
CELLULAR GENERAL
PARTNERSHIP:

John Edmund Selent
Edward Tipton Depp
Felix Henri Sharpe, II
Louisville, Kentucky